```
          IN THE UNITED STATES DISTRICT COURT FOR
        THE DISTRICT OF MARYLAND, NORTHERN DIVISION
```

|  |  |
|---|---|
| DONALD C. WILHELM, JR., | * |
| Plaintiff, | * |
| v. | * CIVIL NO.: WDQ-09-1713 |
| JUDITH A. WILHELM, | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Donald C. Wilhelm, Jr. ("D. Wilhelm") sued Judith A. Wilhelm ("J. Wilhelm") for interference with custody and visitation rights, and intentional infliction of emotional distress. Pending are J. Wilhelm's motions for summary judgment and sanctions under Rule 11 and D. Wilhelm's motion for voluntary dismissal. For the following reasons, D. Wilhelm's motion to dismiss will be granted, J. Wilhelm's motion for sanctions will be granted in part and denied in part, and J. Wilhelm's motion for summary judgment will be denied as moot.

I.  Background[1]

Donald and Judith Wilhelm ("the Wilhelms") were married on February 15, 1969.  Judith A. Wilhelm Aff. ¶ 1, Jan. 3, 2010; Donald C. Wilhelm, Jr. Aff. ¶ 3, Jan. 14, 2010.  On March 21, 1988, their daughter, Ashley Wilhelm, was born.  Ashley Wilhelm Aff. ¶ 1, Dec. 4, 2009.  In January 2004, D. Wilhelm informed J. Wilhelm that he wanted a divorce, D. Wilhelm Aff. ¶ 5, and the Wilhelms separated on March 25, 2004, J. Wilhelm Aff. ¶ 3.  In March 2005, Ashley was admitted to a psychiatric facility for depression.  J. Wilhelm Aff. ¶ 4; D. Wilhelm Aff. ¶ 7.

On June 20, 2005, the Wilhelms entered a Marital Settlement Agreement, which established each parent's custody and visitation rights during Ashley's childhood.  D. Wilhelm Aff. ¶¶ 3-4.[2]  On June 22, 2005, the Wilhelms divorced.  *Id*. ¶ 3.  In September 2005, J. Wilhelm and Ashley moved to Texas.  J. Wilhelm Aff. ¶ 8.  D. Wilhelm did not approve of the move and

---

[1]  For the purposes of summary judgment, J. Wilhelm's "evidence is to be believed, and all justifiable inferences are . . . drawn in [his] favor."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

[2]  Ashley was to reside "primarily with" J. Wilhelm, the Agreement provided that the Wilhelms had "joint custody," which gave them "equal authority as to all important decisions regarding [Ashley]" and the obligation "to confer reasonably concerning all such decisions."  Pl.'s Summ. J. Mot., Ex. 4 at 4.  It further provided that D. Wilhelm had "reasonable visitation" rights, and the Wilhelms agreed to use "fair, mature, and practical judgment" to schedule visitation "from time to time on a reasonable basis such that the interests of all parties [were] adequately and properly served."  *Id*.

2

feared that the distance would interfere with he and Ashley's relationship. D. Wilhelm Aff. ¶ 12. In November 2005, Ashley returned to Maryland and lived with her sister and then her father for a time. A. Wilhelm Aff. ¶ 11. D. Wilhelm intended to have Ashley re-enrolled at River Hill High School, but she returned to Texas without his approval before classes began. *Id*. ¶ 13; D. Wilhelm Aff. ¶ 13.

On March 19, 2009, D. Wilhelm filed suit in the Circuit Court for Howard County. Paper No. 1 ¶ 1. On June 30, 2009, J. Wilhelm removed the case to this Court, *id*., and filed her answer on July 23, 2009, Paper No. 11. On January 4, 2010, J. Wilhelm moved for summary judgment. Paper No. 22. On January 28, 2010, she moved for sanctions under Rule 11. Paper No. 25. On April 16, 2010, D. Wilhelm moved to voluntarily dismiss. Paper No. 28.

II. Voluntary Dismissal

Under Rule 41(a), after an opposing party serves either an answer or a motion for summary judgment, the plaintiff may dismiss an action "only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). Because J. Wilhelm does not oppose voluntary dismissal,[3] the court will permit D. Wilhelm to dismiss this case. This dismissal will

---

[3] J. Wilhelm represents that she is willing to consent to a voluntary dismissal if her motion for Rule 11 sanctions is maintained. *See* Paper No. 29 at 6.

3

moot J. Wilhelm's motion for summary judgment but not her motion for Rule 11 sanctions.[4]

III. Motion for Rule 11 Sanctions

J. Wilhelm seeks sanctions against D. Wilhelm for, *inter alia*, filing this complaint alleging facts without evidentiary support in retaliation for her complaint against him in the Circuit Court for Howard County. Paper No. 25 ¶¶ 5-9. D. Wilhelm contends that evidence supports the facts he alleged and that no action by J. Wilhelm was pending against him when he filed this suit. Paper No. 27 at 8.

Under Fed. R. Civ. P. 11(b), an attorney or unrepresented party must certify to the court that to the best of his "knowledge, information, and belief" formed after a reasonable inquiry: (1) the action is not being presented for an improper purpose, (2) the legal contentions are warranted, (3) the facts alleged have or will have evidentiary support, and (4) denials of facts are based on evidence or lack of knowledge. *See* Fed. R. Civ. P. 11(b). "[I]mproper purpose may be inferred from a claim's lack of factual or legal foundation or other factors such as the timing of filing of the complaint." *Giganti v. Gen-X Strategies, Inc.*, 222 F.R.D. 299, 313 (E.D. Va. 2004) (*citing*

---

[4] "Rule 11 sanctions may be imposed when a case is no longer pending." *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 152 (4th Cir. 2002).

*In re Kunstler*, 914 F.2d 505, 518 (4th Cir. 1990)). Rule 11(c) allows attorneys and parties to be sanctioned for Part (b) violations.[5]

On April 7, 2004, D. Wilhelm filed suit for divorce in the Circuit Court of Howard County. *See* Paper No. 29, Ex. 3 (Circuit Court for Howard County docket) at 19. J. Wilhelm filed a counter complaint against D. Wilhelm on February 6, 2009 in that suit. On March 9, 2009, D. Wilhelm filed a motion to dismiss and for summary judgment in the suit. *Id*. On March 19, 2009, he sued J. Wilhelm for tortious interference and intentional infliction of emotional distress ("IIED"). Paper No. 1 ¶ 1. On March 23, 2009, J. Wilhelm voluntarily dismissed her complaint without prejudice, *see* Paper No. 29, Ex. 3 at 20, and re-filed it as a separate action in Howard County Circuit Court on March 30, 2009, *see* Paper No. 25, Ex. E.[6]

---

[5] Rule 11's "safe harbor" provision requires a party seeking sanctions to serve the Rule 11 motion at least 21 days before filing it; this provides an opportunity for withdrawal or correction of the challenged pleading. Fed. R. Civ. P. 11(c)(2). The safe harbor defense is waived if not properly asserted. *Bond v. Blum*, 317 F.3d 385, 400 (4th Cir. 2003)(*citing Rector v. Approved Fed. Savings Bank*, 265 F.3d 248 (4th Cir. 2001)). D. Wilhelm waived the safe harbor defense by failing to raise it in his opposition.

[6] J. Wilhelm voluntarily dismissed and re-filed her counter-complaint on the recommendation of Judge Richard S. Bernhardt, who explained that it needed to be filed as a new matter and not as part of the Wilhelms' divorce case. Paper No. 29, Ex. 4 at 1.

D. Wilhelm argues that this March 19 complaint could not have been filed in retaliation for J. Wilhelm's Howard County suit because "her [March 30] action was filed nearly two weeks after this action was filed." Paper No. 27 at 8. He further argues that, at the time of his complaint, he was not "prescient enough to anticipate that [J. Wilhelm] would sue him" and only had a "suspicion" that she might sue him. Paper No. 27 at 8 n.4. This argument is disingenuous.

J. Wilhelm had a Howard County suit pending against D. Wilhelm when he filed this action. D. Wilhelm has failed to rebut the inference that he filed this action for the improper purpose of retaliation.

That many of the facts alleged in the complaint are unsupported by D. Wilhelm's affidavit further strengthens the inference of improper purpose. In his complaint, D. Wilhelm alleged that his ex-wife: (1) "began to arbitrarily deny [him] access to [Ashley]" before the divorce, Compl. ¶ 10; (2) "moved [Ashley] to Texas from Maryland without [his] knowledge," *id*. ¶ 24; (3) "took [Ashley] to Texas . . . in violation of the parties' . . . agreement that [he] was to assume responsibility for [Ashley] on a day-to-day basis," *id*. ¶ 26; and (4) "denied [him] all contact with [Ashley]" from September 2005 to January

2009, *id*. ¶ 40.[7]  These allegations--involving matters within D. Wilhelm's personal knowledge at the time of his complaint--are not supported by his affidavit and are contradicted by Ashley's affidavit.[8]  Accordingly, improper purpose may be inferred from the lack of factual support for several of the key allegations in Wilhelm's complaint.[9]

The Court has discretion in determining the appropriate sanctions for violations of Rule 11.  *See* Fed. R. Civ. P. 11 advisory committee's note to 1993 amends.  Because "the purpose of Rule 11 sanctions is to deter rather than to compensate . . . if a monetary sanction is imposed, it should ordinarily be paid

---

[7] These facts are intended to be illustrative and not an exhaustive listing of the unsupported allegations made in the complaint.

[8] D. Wilhelm stated that "[e]motionally, it [was] very difficult for [him] to undermine assertions made in his daughter Ashley's affidavit."  Paper No. 23 at 8.  Instead, he chose to question Ashley's competence to make an affidavit, arguing that she signed it "merely six weeks after she underwent a critical brain operation."  D. Wilhelm Aff. ¶ 16.  But D. Wilhelm's unsubstantiated belief that Ashley was incompetent to provide testimony does not raise a question of fact as to the veracity of her affidavit.  J. Wilhelm's attorney has testified that he worked with Ashley on her affidavit and "[a]t no point in time did [she] ever state, suggest, imply, or infer that she was incapable of participating" by affidavit.  Michael S. Warshaw Aff. ¶ 6, Jan. 27, 2010.

[9] J. Wilhelm also contends that the claim for tortious interference with custody and visitation rights was not warranted by existing law, as there was no evidence of the required element of abduction or harboring of Ashley by J. Wilhelm.  Paper No. 25 ¶¶ 2-4.  The complaint alleged facts that--although unsupported by the evidence--might have supported the element of harboring or abduction.

7

into court as a penalty." *Id*. Accordingly, to deter future misconduct, the Court will impose on D. Wilhelm a penalty of $1000 payable to the Clerk of Court within 30 days from the date of the Order.

III. Conclusion

For the reasons stated above, D. Wilhelm's motion to dismiss will be granted, J. Wilhelm's motion for sanctions will be granted in part and denied in part, and her motion for summary judgment will be denied as moot.


June 28, 2010 _____/s/_____
Date William D. Quarles, Jr.
United States District Judge